IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR COLLIER COUNTY, STATE OF FLORIDA
CIVIL DIVISION

NATALIE M. GLAZE,

Plaintiff, Case No.:

v. Division:

NWNG LLC, A FOREIGN
LIMITED LIABILITY COMPANY d/b/a
NAPLES GRANDE BEACH RESORT,

Defendant,
_______________________________________/

**COMPLAINT**

Plaintiff, Natalie M. Glaze ("Plaintiff" or "Glaze"), sues the Defendant, NWNG LLC, a Foreign Limited Liability Company, d/b/a Naples Grande Beach Resort (hereinafter "Defendant"), and alleges as follows:

1. This is an action for damages that exceeds $15,000.00, exclusive of interest, court costs and attorneys' fees.

2. Plaintiff is a female who resides in Collier County, Florida. She was employed by the Defendant, at its business location at 475 Seagate Drive, Naples, Florida 34103.

3. The Defendant is a foreign corporation with its principal place of business in Collier County, Florida.

4. Venue is proper in Collier County in that the tortious activities as alleged herein occurred in Naples, Collier County, Florida.

5. Anthonia Smith was Defendant's General Manager who had the authority to hire and fire, make job assignments and schedules, and otherwise had control over the terms and conditions of Plaintiff's employment.

6. In November of 2017, Anthonia Smith interviewed and hired Natalie Glaze. Smith offered Glaze three different positions: a front desk position, a concierge position, and a room controller position. Smith encouraged Glaze to accept the room controller position.

7. On December 20, 2017 Smith took Glaze on a tour. Smith asked Glaze if she wanted to have lunch. Glaze told Smith she would have lunch on her own.

8. On December 21, 2017, on Glaze's second day on the job, Smith greeted Glaze with a hug and told her "You don't know how happy I am to see you again." From then on, Glaze waited until Smith was seated before saying hello.

9. Smith repeatedly sent Glaze overly-friendly emails and texts such as "Have a good day." "I will check in on you." "Please, please call me if you need me please."

10. As time passed, Smith became more obsessed with Glaze as a female subordinate.

11. Examples of increasingly personal and intrusive emails are as follows:

12. On January 4, 2018, Smith sent Glaze an email that read "Good morning, Always good to see you. You can come and get me if you need my help. Hope you have a great day." On January 6, 2018, Smith sent Glaze an email "Good morning, Happy Saturday."

13. Smith constantly asked "How are you doing?" If Glaze did not respond to Smith's text he would send a follow-up text stating "What happened? What is wrong?"

14. Smith held or tried to hold Glaze's hand when discussing work issues. Smith rubbed the top of her hand. After such discussions, Smith often hugged Glaze.

15. On January 25, 2018, Smith sent Glaze an email that stated "Do you know how happy I am to have you here? You are a gem, thank you." Smith continued to text and email Glaze asking her to lunch with him. Glaze began going to lunch at different times so that she would avoid Smith.

16. Smith made constant weird comments about Glaze's eating habits and mannerisms. He became obsessed with her diet and body. Smith examined the contents of Glaze's waste basket to see if she had any snacks.

17. Whenever Smith observed a man entering Glaze's office, he immediately came in and joined the conversation. Smith remained in Glaze's office until the male left.

18. Smith continued to examine Glaze's waste basket. He uncrumbled papers and read them. He said "I just want to know what you have been up to." This occurred 8 to 10 times. Glaze's co-workers began to express concern about Smith's odd attention and focus on her.

19. On January 29, 2018, during a monthly meeting, Smith said "When we come into work we need to forget about our husbands, forget about our wives, forget about our children." He stared at Glaze.

20. On February 3, 2018, Smith sent Glaze an email asking "When is your birthday?" On February 7, 2018, Smith sent Glaze an email stating "Good morning, So happy to see you. Missed you the past 2 days, not good oh my. I know I may have a plan for us."

21. On February 9, 2018, Smith sent Glaze an email that stated "Don't let that guest upset you. Don't want you to be upset." Glaze responded "I'm not upset. It just took me by surprise." Smith responded "Thank you, I know you had a stressful day but I appreciate all you do. It means the world to me."

22. Glaze's husband sent Smith a text. "This is Natalie's husband...I saw your text to "My Wife" tonight and find it unprofessional. Please control yourself when communicating with her." Smith responded "I sure will and my sincere apologies…"

23. On February 10, 2018, Smith handed Glaze a post-it note that said "I am sad" with a sad face. Smith came into Glaze's office and asked "Where is your name tag? Why aren't you wearing it. "Where is your daily checklist? I want to go over it." Glaze asked "Why would you ask me for that today when you have never asked me for that before?"

24. Smith came behind Glaze at lunch and whispered "I see there is no room for me." Later that day, Smith sent Glaze an email that stated "Was no room for me and I wanted to talk." A sad face emoji was also sent.

25. On February 11, 2018, Smith came into Glaze's office, sat down and handed her a card. Glaze assumed it was an apology. Glaze told Smith "This is not necessary, everything just needs to be professional moving forward and we can easily get over this." Smith said "I insist you accept it" and left the card on her desk. An hour or so later Smith returned and said "Why haven't you opened your card?" Glaze said "Because I don't want to deal with whatever is inside here. I just want to move on." Smith told Glaze "just open it" and walked out. Glaze opened the card and there was a $100 gift card to a restaurant.

26. Smith responded "You are welcome, just a small appreciation. Nothing to do with VD or your BD. Thank you, I truly mean it." Glaze responded "Vd or Bd??? So confused" Smith responded "Valday and Bday- this one is completed" Smith wrote an email "Good, I am happy you got it lol. It's going to be a surprise. Have you ever used the skype on your desk top"

27. On February 16, 2018, during a tour of the Naples Grande a cardboard box hit Smith. Glaze was frightened and screamed. Smith put his hand on Glaze's shoulders and said "I will always protect you. You are safe with me."

28. On February 18, 2018, Glaze texted Smith and asked if he would call her at work on his day off because there was an issue with a VIP and the guest was really upset. Smith ended the call by saying "I love it when you call me, please call me more often please"

29. Smith sent Glaze an email stating "Thank you for updating me and I like when you called me today."

30. On February 20, 2018, Smith was presented with an outline of issues by Glaze. Glaze's major concern was his inappropriate behavior. Glaze reviewed all the unsettling things that Smith had been doing and saying to her, particularly his obsessive concern with her diet, her husband, her habits, schedule and her "happiness." Smith insisted the door be closed. Glaze was in his office for over an hour. Smith told Glaze her body language was closed off. Glaze asked him what do you mean? Smith told her she needed to uncover her chest and uncross her legs. Glaze was upset and told Smith that this was "Unacceptable!!!"

31. Throughout the conversation, Smith said "I can't stand to see you like this you seem so upset." Smith's eyes became watery. At the end of the conversation Smith said "Let me give you a hug." Smith wrapped both his arms around Glaze. He said "You are the most important person to me. You don't even know how I feel about you." Glaze said "It seems obvious." He shook his head and said "No, you don't even know."

32. On February 25, 2018, Smith sent Glaze an email that stated "Welcome back. I am soooo happy to see you. I really missed you I am honest about that."

33. On or about February 26, 2018, Glaze discussed what she should do next about Smith's behavior with Issac Blanco, (Naples Grande IT employee). Glaze told Blanco about the gifts Smith had given her and how Smith made her have lunch with him daily and the fact Smith had no respect for her marriage. Blanco told Glaze that she needed to go to HR immediately. Blanco walked with Glaze to Waleska's (Waleska Otero, Human Resources Manager) office. Glaze told Waleska that she was scared of Smith because he was obsessed with her. Glaze told Waleska about the constant emails, texts, gifts, the constant need to spend lunch break with her. Waleska asked Glaze for a written statement.

34. On February 27, 2018, Glaze went directly into Waleska office to report the other matters involving Smith. Glaze told Waleska how fearful she was of Smith because his behavior was bizarre and obsessive. Glaze told Waleska how Smith notices and comments about everything she does—what she eats, what she drinks, how she wears her hair. Waleska said she had spoken to Smith. Waleska told Glaze that she was just assuming things.

35. Glaze told Waleska about the disturbing emails and asked if she should send them to her. Waleska replied "No we have access to all your emails and that she will look through all of them during the investigation." She then said "I think you know you probably should not have sent him an email stating that you missed him." Glaze told Waleska she was simply "being as friendly to him as she was to everyone she worked with." Glaze asked Waleska if she thought that her trying to be friendly and complimentary to a manager deserved all the crazy responses that Smith had made.

36. On March 2, 2018, Glaze sent Waleska an email that asked for access to her emails to prepare an accurate time line. Waleska told Glaze "At this time, no need to access the emails from home, it is your time off."

37. Natalie responded that there were additional things. For instance when Smith comes in her office he digs through and collects the contents of her trashcan. This was mentioned many times and Glaze found it weird and intrusive. Smith would typically laugh and say "I just want to know what you have been up to today." Waleska did not respond or provide access to the work emails.

38. Smith became distant and sulking around Glaze for a short period which made work very difficult. After a period of sulking Smith began to harass Glaze again by, for example, coming up and whispering in her ear, staring at her, and following her.

39. On March 12, 2018, Waleska called Glaze into her office to discuss the investigation. She told Glaze that Smith did not deny anything. Waleska said Glaze just misunderstood him. For example, Smith claimed he called everyone "hun." Waleska told Glaze "Smith just appreciates you."

40. The next day, March 13, 2018, Melinda, from Accounting, sent an email to Glaze and Defendant's managers, as follows:

> "Hi Natalie, It appears that you posted Cash again for Mr Jeremy Fogo. I am assuming you did not actually accept the money and it was an error again clearing the due outs as no deposit envelope was received today. Can you please correct it as you did the last time so you are not listed on the Cash Report for this month? Also, there was no form of payment taken at check in, can you please contact the guest for a credit card payment? Thank you, Melinda"
>
> Glaze responded "Every single person in the front desk area has made this mistake multiple times. Accounting has NEVER copied Paul Burke or Waleska Otero."

41. Glaze then received a call from Jacob Damouni's office, the General Manager, asking about this situation since he received a call from Paul Burke. Glaze explained it was a very simple mistake that was made by everyone when there is not a credit card on file.

42. On March 14, 2018, Glaze met with Damouni in his office and told him she would have to leave her job if something was not done about Smith. Damouni said he was aware of the situation with Smith, but that is was a "cultural thing." Glaze told Damouni that Smith was not restrained at all, and that something must be done.

43. Glaze also told Damouni that she felt targeted because she had been to HR and complained about Smith. Once she made the smallest computer mistake, one that was made by employees weekly, it was sent to Paul Burke and Waleska in HR. Damouni told Glaze that he would look into it and that they would meet the next day.

44. To prepare for the meeting with Damouni, on March 15, 2018, Glaze sent an email to Waleska stating "I am requesting a statement of the outcome regarding the investigation of my allegation of Smith's inappropriate work behavior." Waleska never responded.

45. On March 16, 2018, Glaze walked to the front desk. Smith turned and said loudly "Good morning!" Glaze turned to walk to Damouni's office. Smith quickly followed Glaze to catch up with her. Smith caught up with Glaze and stared sternly at her and said "I said good morning!" Glaze moved quickly into Damouni's office.

46. Glaze told Damouni that Smith had followed her to his office. She could not work unless something was done, she was scared of him. Damouni said "You don't understand this man is going through a break down. He calls me every day crying. My foot is up his ass.

47. Glaze told Damouni that she already knew that Smith was not mentally stable. Glaze reminded Damouni, "He behaves like he is obsessed with me and that scares me. Every day he says weird things like I need you, why are you drinking that brand of water? Be there for me, Are you okay? Smile for me please, Why is your hair up? You have no idea the way I feel about you, Are you going to eat that? Please please call me please. I really miss you, Do you know how happy I am to have you here? You are such a breath of fresh air, Can I have lunch with you today please, Is something wrong? What do you want for your birthday? I appreciate all you do it means the world to me, I love it when you call me. And let's not forget he goes through my trashcan every day."

48. Glaze told Damouni that Smith was obsessed with her as a female. Glaze told Damouni that if the company was not going to do anything, she had no choice but to leave to protect herself. Accordingly, Glaze was constructively discharged.

49. On March 17, 2018, Glaze's husband received four hang up calls from a number that belonged to Anthonia Smith.

50. On July 16, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("E.E.O.C."). Plaintiff's charge was automatically dual-filed with the Florida Commission on Human Relations ("FCHR"), pursuant to the Work Sharing agreement between the EEOC and FCHR. More than one hundred and eighty (180) days have expired since Plaintiff filed her charge. Accordingly, this action has been timely commenced under Section 760.11 (8).

## COUNT I – SEXUAL HARRASSMENT

51. Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 50 of the Complaint.

52. During Plaintiff's employment with Defendant, she was subjected to sexual harassment by Smith, which affected the terms, conditions, and privileges of her employment and was of such a severe and pervasive nature so as to alter the conditions of her employment and create an abusive and hostile work environment. Defendant had constructive and actual notice of the harassment. Plaintiff placed Smith and Defendant on notice of the sexual harassment and retaliation she sustained, however, it did not stop.

53. Defendant is directly liable for the sexual harassment by Smith since tangible employment actions in the forms of discipline and constructive discharge were taken against Plaintiff. Alternatively, Defendant is liable for Smith's sexual harassment, since instead of prompt and effective remedial action, Plaintiff was told that Defendant would not take action to protect her.

54. As a result of the wrongful employment practices complained of above, Plaintiff has been deprived of equal employment opportunity, has suffered emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

WHEREFORE, Plaintiff demands judgment for damages against Defendant for, including but not limited to, lost wages, benefits and other compensation in the past and future, together with

prejudgment interest on the outstanding obligation, or reinstatement, together with compensatory and punitive damages, attorneys' fees and costs and such other relief as may be appropriate under the Florida Civil Rights Acts of 1992, sections 760.01-760.11.

## COUNT II- RETALIATION

55. Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 50 above. The Defendants was the "employer" of Plaintiff as defined by the FCRA.

56. At all times material to this action, there has been in full force and effect a provision of Florida law, Chapter 760.10 et seq, that prohibits discriminatory and retaliatory employment practices against employees because they have opposed unlawful employment practices and have complained of such unlawful practices.

57. Plaintiff complained to Smith and Defendant's management about conduct that constituted sexual harassment. Smith was obsessed with Plaintiff. Plaintiff was offended by the obsessive interest of a sexual nature, both subjectively and objectively. Moreover, Plaintiff, in addition to her personal humiliation and fears, sought out help from management to protect her from Smith's obsession and stalking. Accordingly, Plaintiff engaged in protected opposition conduct and was protected against retaliation under the applicable civil rights statutes.

58. Plaintiff complained about unlawful harassment of a sexual nature. In response, Plaintiff was stalked, disciplined, implicitly threatened and constructively discharged for pretextual reasons.

59. As a result of the unlawful employment practices complained of above, Plaintiff has been deprived of equal employment opportunity, has suffered emotional pain and suffering, inconvenience, mental anguish and other harms and losses.

WHEREFORE, Plaintiff demands judgment for damages against the Defendant for including, but not limited to, lost wages, benefits and other compensation in the past and future,

together with prejudgment interest on the outstanding obligation, and/or reinstatement, together with all other compensatory damages, including but not limited to damages for emotional distress and harm, and punitive damages, attorneys' fees and costs and such other relief as may be appropriate under Chapter 760.10, section 760.01-760.11.

**PLAINTIFF REQUESTS TRIAL BY JURY ON ALL COUNTS.**

Ronald W. Fraley
Ronald W. Fraley
Florida Bar No. 0747025
The Fraley Firm, P.A.
412 East Madison Street, Suite 1213
Tampa, FL 33602
Primary Email: rfraley@fraleylawfirm.com
Secondary Email: phuret@fraleylawfirm.com
Telephone: (813) 229-8300
Attorney for Plaintiff